UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | Case No. 1:22-cr-00148-DCN |
|---|---|
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| KEISHA DAWN MURDOCH, | |
| Defendant. | |

## I. INTRODUCTION

Before the Court is Defendant Keisha Dawn Murdoch's Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 100. The Government filed a Response, opposing Murdoch's Motion (Dkt. 102), and Murdoch replied. Dkt. 103. The matter is ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).[1] Upon review, and for the reasons set forth below, the Court DENIES the Motion.

---

[1] Although this is a criminal case, the local civil rule regarding hearings applies as there is no corresponding criminal rule. *See* Dist. Idaho Loc. Crim. R. 1.1(f) (explaining that "all general provisions of the Local Rules of Civil Practice apply to criminal proceedings unless such provisions are in conflict with or are otherwise provided for by the Federal Rules of Criminal Procedure or the Local Rules of Criminal Practice").

MEMORANDUM DECISION AND ORDER - 1

## II. BACKGROUND

**A. Factual Background**

On May 11, 2022, Murdoch and her mother were stopped for a traffic violation. During the stop, a canine officer detected controlled substances in the vehicle. A subsequent search of the vehicle revealed a loaded handgun, methamphetamine, fentanyl pills and powder, fluorofentanyl, cocaine, alpha-PHP, and $20,080 in drug proceeds. During the stop, Murdoch admitted to the officers that she and her mother regularly purchased and distributed methamphetamine, fentanyl, heroin, and cocaine. Nevertheless, she and her mother were released with the understanding that they would be cooperating further with law enforcement. Dkt. 97, at 2.

However, over the next five weeks, Murdoch did not cooperate with law enforcement, and instead, continued to commit serious drug crimes. *Id.* On June 20, 2022, officers again stopped Murdoch and her mother. This time, they arrested Murdoch pursuant to an outstanding warrant. In the car, officers found even larger amounts of controlled substances, including methamphetamine, cocaine, alpha-PHP, fentanyl pills and powder, heroin, hydrocodone, hydromorphone, and roughly $9,000 in drug proceeds.

In December 2022, Murdoch pleaded guilty to one count of possession with intent to distribute methamphetamine. *See* Dkt. 50. She was subsequently sentenced to 128 months in prison. In issuing its sentence, the Court took into consideration Murdoch's health issues, traumatic childhood, and other mitigating factors.

Before being taken into custody by the Federal Bureau of Prisons (the "BOP"), Murdoch was serving time in a facility run by the Idaho Department of Correction

("IDOC"). On May 23, 2023, while in IDOC custody, Murdoch visited a cardiologist to have her pacemaker interrogated. Upon inspection, the cardiologist concluded that the pacemaker's battery would last until January 2024 and advised Murdoch to schedule monthly follow-up appointments to keep tabs on the pacemaker. Dkt. 100-2, at 2–4. Murdoch entered BOP custody in July 2023.

The BOP has not scheduled regular follow-up visits for Murdoch. In August 2023, Murdoch contracted Covid-19. Then, one month later, she was taken to the emergency room after experiencing chest pain. While there, hospital staff determined that her pacemaker battery was low, but functioning. The hospital scheduled a return appointment for Murdoch in mid-October, however, that appointment had to be cancelled because the date of the appointment was disclosed to Murdoch, creating a security risk. The BOP rescheduled a follow-up for Murdoch on November 15, 2023, but took Murdoch to her appointment one day late, and the pacemaker interrogation staff was off-duty.

On January 22, 2024, Murdoch reported blurry vision, dizziness, and exhaustion. As of March 2024, the Court has received no indication that the battery in Murdoch's pacemaker has been replaced, though the BOP avers that it is "hoping to get something scheduled" in the near future. Dkt. 102, at 9.

**B. Procedural Background**

On August 22, 2023, Murdoch submitted a request for compassionate release to the warden of her facility.     Dkt. 102-1. The warden denied her request on September 5, 2023, finding that, despite her health problems, Murdoch remained capable of providing self-care. Dkt. 102-2. She brought the instant Motion for Compassionate Release on

MEMORANDUM DECISION AND ORDER - 3

February 6, 2024. Dkt. 100.

## III. LEGAL STANDARD

Murdoch seeks compassionate release under the First Step Act ("FSA"), amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances. In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission.[2] 18 U.S.C. § 3582(c)(1)(A). If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id*.; *Rodriguez*, 424 F. Supp. 3d at 680.

The policy statements at U.S.S.G. § 1B1.13 establish that "extraordinary and compelling reasons" include: (1) a defendant's medical circumstances; (2) a defendant's age combined with his or her experiencing serious deterioration in physical or mental health due to the aging process; (3) a defendant's family circumstances where the defendant becomes the only available caregiver for a close relative; (4) a defendant's suffering abuse by an employee or contractor of the BOP; (5) a defendant's subjection to an unusually long

---

[2] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019) (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.")).

MEMORANDUM DECISION AND ORDER - 4

sentence where the defendant has already served at least ten years of the sentence; or (6) any other circumstance or combination of circumstances of similar gravity. *Id.* at § 1B1.13(b). The statements also assert that, before a sentence may be reduced, the Court must find that the defendant is not a danger to the safety of any other person or to the community. *Id.* at § 1B1.13(a)(2).

Until recent amendments, U.S.S.G. § 1B1.13 addressed only motions brought by the Director of the BOP—and not those brought by defendants individually. *See United States v. Aruda*, 993 F.3d 797, 801–02 (9th Cir. 2021). To be sure, district courts were free to consult the statements as persuasive authority, but the Ninth Circuit made clear that the statements were not binding. *Id.* at 802. However, under recent amendments, U.S.S.G. § 1B1.13 expressly applies to motions brought by the BOP Director *and* to those brought by individual defendants. U.S.S.G. § 1B1.13(a). Along with its sister district courts in the Ninth Circuit, the Court understands these amendments to resolve the discrepancy highlighted in *Aruda* and to make U.S.S.G § 1B1.13 binding. *See United States v. Brugnara*, 2024 WL 332867, at *2 (N.D. Cal. Jan. 28, 2024); *United States v. Garcia Nava*, 2024 WL 221439, at *2 (S.D. Cal. Jan. 19, 2024); *United States v. Cunningham*, 2024 WL 50908 (D. Mont. Jan. 4, 2024); *United States v. Brown*, 2023 WL 8650290, at *3 (W.D. Wash. Dec. 14, 2023)

In any event, the catch-all clause at U.S.S.G. § 1B1.13(b)(5) affords the Court significant leeway in defining precisely what qualifies as an extraordinary and compelling justification for a sentence reduction.

MEMORANDUM DECISION AND ORDER - 5

## IV. ANALYSIS

### A. Exhaustion of Administrative Remedies

Under 18 U.S.C. § 3582(c)(1)(A), a defendant may move the Court for a reduction in sentence only after he has "fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." Here, Murdoch filed a request with the warden, then waited beyond the requisite thirty days to file the instant Motion. *See id*. Accordingly, the Court finds that she has satisfied the statutory exhaustion requirements.

### B. Extraordinary and Compelling Reasons

As noted above, U.S.S.G. § 1B1.13(b) states that a defendant's medical circumstances may justify a reduction in sentence. The policy statements expound on what kind of medical circumstances qualify. *Id.* at § 1B1.13(b)(1). Relevant to Murdoch's Motion, the statements allow for a reduction where the defendant suffers from a medical condition that requires long-term or specialized care that is not being provided by BOP and without which the defendant is at risk of serious deterioration in health or death. *Id.* at § 1B1.13(b)(1)(C). Further, a defendant can seek a sentence reduction if she is housed at a correctional facility affected by an ongoing outbreak of infectious disease, she is at increased risk of suffering severe medical complications or death if exposed to the outbreak, and her risk cannot be adequately mitigated in a timely manner. *Id.* at § 1B1.13(b)(1)(D).

Section 1B1.13(b)(1)(D) is inapplicable here. Covid-19 is currently active in

Murdoch's facility, and the Court acknowledges that her health history may increase her risk for covid-related complications. However, Murdoch has not shown that her risk cannot be adequately and timely mitigated, nor has she shown that she has taken any affirmative steps to mitigate her risk (e.g., getting vaccinated). The mere fact that the risk exists is not enough for the Court to find that extraordinary and compelling reasons justify a sentence reduction.

Unlike Section 1B1.13(b)(1)(D), Section 1B1.13(b)(1)(C) supports a finding of extraordinary and compelling reasons warranting a sentence reduction. Murdoch has clearly established that she suffers from a heart condition that requires long-term and specialized care. Her required care includes pacemaker maintenance and consistent monitoring by cardiologists. If she does not receive such care, she is at risk of serious deterioration in health or death.

Since taking custody of Murdoch, the BOP has shown little urgency or interest in ensuring Murdoch's pacemaker is properly cared for or in securing for her access to heart specialists. BOP employees took Murdoch to the emergency room in September 2023, but only after she reported chest pain. Dkt. 102, at 7. The employees subsequently scheduled a follow-up visit with a cardiologist, but as mentioned above, they took Murdoch to that appointment a day late—a day on which the pacemaker interrogation staff was off-duty. Dkt. 100-1, at 3. Outside of these two visits, the BOP has not provided Murdoch with access to a heart specialist.[3]

---

[3] In its filing on February 27, 2024, the Government stated that the BOP was "hoping to get something scheduled this week" to address Murdoch's pacemaker concerns. But the Court has heard nothing more

The BOP's lackluster efforts would be less concerning if Murdoch's pacemaker had a fresh battery, or if Murdoch had not been instructed to schedule monthly follow-up appointments. But by all accounts, Murdoch's pacemaker is on its last leg, and her cardiologists have been clear that she needs regular monitoring. Dkt. 100-2, at 2–4, 8. Accordingly, the Court is satisfied that Murdoch requires care that is not being provided by BOP, and that such deprivation puts her at risk of serious deterioration in health. She has, therefore, shown extraordinary and compelling reasons warranting a sentence reduction.

**C. Danger to Individuals or the Community**

The Court turns next to whether Murdoch still presents a danger to the safety of another individual or the community at large. U.S.S.G. § 1B1.13(a)(2). It finds that she does.

Because Murdoch does not discuss her plans upon a hypothetical release, the Court is left to consult her Presentence Investigation Report. *See* Dkt. 63. The report indicates that, leading up to her arrest, Murdoch was heavily involved in an extensive drug-trafficking partnership with her mother. *Id.* at 5. Murdoch admitted that, as part of the partnership, she and her mother engaged in bi-weekly purchases of eight to ten pounds of methamphetamine and 2,000 to 4,000 fentanyl pills. *Id.* The pair admitted to selling methamphetamine, fentanyl, cocaine, alpha-PHP, heroin, hydrocodone, hydromorphone, and bath salts. *Id.* at 4–6.

---

regarding these efforts and hopes alone are an insufficient basis to show Murdoch is receiving the care she needs.

MEMORANDUM DECISION AND ORDER - 8

Outside of drug trafficking, Murdoch has very little employment history. She has never held a job for more than two months and she has neither a high school diploma nor a GED. *Id.* at 13. She became addicted to methamphetamine at age eighteen. *Id.* That addiction bled into experimentation with and abuse of prescription medications, heroin, and fentanyl. *Id.* Furthermore, Murdoch has shown that even after being apprehended by law enforcement, she was unwilling to stop her illicit conduct. Given Murdoch's personal and professional history, the Court is concerned that upon release, Murdoch would promptly pick up right where she left off. A statement to the contrary or a plan detailing how Murdoch would avoid falling into old habits could weigh against such a concern; however, no such statement or plan has been introduced.

The substances with which Murdoch has been repeatedly involved are corrosive to communities and often deadly to users. Murdoch is certainly in need of medical care. But, for the moment, her health would not prohibit her from re-engaging in destructive conduct. This analysis could change should BOP continue to balk at providing Murdoch the care she needs. But for the time being, the Court finds that Murdoch remains a danger to the community under U.S.S.G. § 1B1.13(a)(2). Accordingly, her request for compassionate release is DENIED.

### D. 3553(a) Sentencing Factors

Even if the Court were to find that Murdoch no longer presents a danger to the community, Murdoch has failed to show that the factors listed in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction. Under § 3553(a), a sentence must, among other things, reflect the seriousness of the offense, promote respect for the law, provide just punishment

MEMORANDUM DECISION AND ORDER - 9

for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and be similar to the sentences of similarly situated defendants.

Murdoch has served roughly one-tenth of her sentence. Considering the quantity and types of drugs with which she was arrested, a one-year sentence would fall well short of reflecting the seriousness of her offense, promoting respect for the law, providing just punishment for her offense, and affording adequate deterrence to criminal conduct. It would also create a significant disparity between Murdoch's sentence and those of similarly situated defendants. Thus, the 3553(a) factors do not support Murdoch's release at this time. However, because Murdoch's sentence did not contemplate the prospect of significant heart damage, nor the stress of living with a nearly expired pacemaker, the Court notes that if the BOP continues to delay addressing Murdoch's pacemaker concerns, this analysis too could change.

## V. CONCLUSION

In sum, the Court finds that Murdoch has exhausted her administrative remedies and has shown that extraordinary and compelling reasons warrant a sentence reduction. However, she has failed to show that she does not present a danger to the community upon release or that a reduction in her sentence is consistent with the goals of the 18 U.S.C. § 3553(a) sentencing factors. Therefore, the Court cannot depart from its prior sentence and release Murdoch at this time. Nevertheless, if within thirty (30) days from the issuance of this order, the BOP has not submitted, through the United States Attorney's Office, documentation to the Court showing that Murdoch's pacemaker concerns have been

properly addressed and resolved, the Court will, reconsider this order *sua sponte*.

## VI. ORDER

The Court HEREBY ORDERS:

1. Murdoch's Motion for Compassionate Release (Dkt. 100) is DENIED.

2. Within thirty (30) days from the issuance of this order, the BOP shall, through the United States Attorney's Office, submit documentation to the Court showing that Murdoch's pacemaker concerns have been properly addressed and resolved. Otherwise, the Court will reconsider this order sua sponte.

DATED: April 1, 2024

David C. Nye
Chief U.S. District Court Judge